## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| ELIJAH SHEPHERD, | ) | CASE NO. 1:15cv00631 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | MAGISTRATE JUDGE GREG WHITE |
| ALAN LAZAROFF, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Elijah Shepherd ("Shepherd"), challenges the constitutionality of his convictions and sentences in the case of *State v. Shepherd*, Cuyahoga County Court of Common Pleas Case No. 550339-11-CR.  Shepherd, *pro se*, filed a Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on March 31, 2015.  On July 17, 2015, Warden Alan Lazaroff ("Respondent") filed his Return of Writ.  (Doc. No. 11.)  For reasons set forth in detail below, it is recommended that Shepherd's Petition be DENIED.

### I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying Shepherd's convictions as follows:

{¶ 3} On May 24, 2011, Shepherd was indicted on three counts: two counts of felonious assault, in violation of R.C. 2903.11(A)(1) and (A)(2), with one- and three-year firearm specifications, and one count of having a weapon while under a disability, in violation of R.C. 2923.13(A)(3). The indictment arose from allegations that on the night of January 29, 2011, Shepherd shot Gregory Dotson at the Spot II Lounge after the two got into an argument over $100.

{¶ 4} After failed plea negotiations, Shepherd waived his right to a jury trial on the charge of having a weapon while under a disability, and that count was tried to the court. The remaining charges were tried to a jury, where the following facts were presented.

{¶ 5} The state presented six witnesses: (1) Dotson, the victim; (2) Michael Stewart, a security worker at the Spot II Lounge, where the shooting took place; (3) Racquel Jernigan, Dotson's fiancée who was at the bar with Dotson on the night of the shooting; (4) Aaron Reese, a police officer who responded to the scene; (5) Michael Hale, a detective assigned to the case; and (6) Jeffrey Ustin, a doctor who treated Dotson at MetroHealth Hospital.

{¶ 6} Dotson testified that he had been friends with Shepherd for 16 years, since they were children. In January 2011, Dotson sold drugs for a living. Sometime near the end of January, Dotson sold Shepherd "a bad package" of crack cocaine for $1,100. Shepherd wanted his money back. Dotson agreed that the crack was not good and agreed to give Shepherd his money back. Shepherd sent a woman to get his money from Dotson. Dotson said he gave the woman $1,100 to give to Shepherd, but Shepherd said that he only received $1,000. Dotson and Shepherd argued over the $100, but Dotson ultimately agreed to give Shepherd another $100 because they were friends. Dotson did not give Shepherd the $100 at that point.

{¶ 7} The next time Dotson saw Shepherd was a few days later, on January 29, 2011, at the Spot II Lounge. Dotson went to the bar with Jernigan and her cousin. Dotson shook Shepherd's hand, and Shepherd asked Dotson for the $100. Dotson said that he only had about $50 to $75 on him, so he told Shepherd to come to his house to get the money when they left the bar. Shepherd told Dotson that he did not have a way to get to Dotson's house.

{¶ 8} Dotson walked to the other side of the bar to order a couple of drinks. Shepherd approached Dotson again, and said, "[y]ou ordering drinks, but you can't give me the $100." At that point, Dotson and Shepherd began arguing about the money. Dotson walked outside to have a cigarette. Shepherd followed Dotson outside. Dotson said there were also other people outside who he did not know. According to Dotson, Shepherd was "making everybody in an uproar." Dotson got angry that everyone was giving him advice and that Shepherd was making a big

deal out of $100. Dotson asked Shepherd if he had his gun on him; Shepherd replied that he did not. Dotson then asked Shepherd if he wanted to fight him "over [the] $100." As Dotson approached Shepherd to fight him, Shepherd shot Dotson. Dotson said that Shepherd "wasn't even three arm reach" from him when Shepherd shot him. Shepherd shot Dotson two times, in his leg and his abdomen. Dotson said that as he tried to stand, his leg broke. Jernigan took Dotson to the hospital.

{¶ 9} Stewart testified that he provided security at the Spot II Lounge on weekends. He was outside the bar when Dotson and Shepherd began fighting. He heard Dotson ask Shepherd if he had a gun and heard Shepherd reply that he did not have a gun. Stewart saw Dotson take off his coat and run toward Shepherd. When Dotson got approximately one foot from Shepherd, Stewart saw Shepherd shoot Dotson.

{¶ 10} Jernigan testified that she went to the bar with Dotson and her cousin. She heard Dotson and Shepherd fighting and heard the shots, but she did not see Shepherd shoot Dotson. Jernigan said that Dotson told her that Shepherd shot him.

{¶ 11} The jury found Shepherd guilty of two counts of felonious assault with the firearm specifications, and the trial court found him guilty of having a weapon while under a disability. The trial court merged the felonious assault counts and sentenced Shepherd to seven years for felonious assault, three years for the firearm specifications, and three years for having a weapon while under a disability, all to be served consecutively, for an aggregate sentence of 13 years in prison. The trial court further notified Shepherd that he would be subject to five years of mandatory postrelease control upon his release from prison. We note that five years of postrelease control is incorrect. Shepherd should have received three years of mandatory postrelease control under R.C. 2967.28 (we will address this issue in Shepherd's fifth assignment of error where he challenges his sentence).

*State v. Shepherd*, 2012 WL 5877553, at **1-2 (Ohio App. 8th Dist. Nov. 21, 2012).

## II.  Procedural History

### A.  Conviction

On May 23, 2011, a Cuyahoga County Grand Jury charged Shepherd with two counts of felonious assault, in violation of Ohio Rev. Code §§ 2903.11(A)(1) and (A)(2), each including two firearm specifications under Ohio Rev. Code §§ 2941.141(A) and § 2941.145(A); and one count of having weapons under disability pursuant to Ohio Rev. Code § 2923.13(A)(3).  (Doc No.

-3-

11-1, Exh. 1.)

Prior to trial, Shepherd, both *pro se* and through counsel, filed several motions to dismiss his indictment on the ground he had been denied a speedy trial.  (Doc No. 11-1, Exhs. 3, 5, 6, 30.) The trial court conducted hearings on the matter, after which the motions were either withdrawn or denied.  (Doc No. 11-1, Exh. 30; Doc. No. 12-1, Tr. 18-41.)

Shepherd's trial began on December 20, 2011.  (Doc. No. 12-1, Tr. 2.)  That day, Shepherd waived his right to a trial by jury as to the charge of possessing a weapon while under disability.  (Doc. No. 12-1, Tr. 67-73; Doc. No. 11-1, Exh. 7.)  A jury found Shepherd guilty on both counts of felonious assault.  (Doc. No. 12-2, Tr. 426-429.)  The trial court found him guilty of having weapons while under disability. (Doc. No. 12-2, Tr. 430.)  On January 17, 2012, the court sentenced him to a total of thirteen years in prison, including consecutive sentences of seven years for the merged felonious assault counts, three years for the merged firearm specifications, and three years for the weapon under disability count.  (Doc. No. 12-2, Tr. 455-457.)

**B.      Direct Appeal**

On February 16, 2012, Shepherd, through new counsel, filed a Notice of Appeal with the Court of Appeals for the Eighth Appellate District ("state appellate court").  (Doc. No. 11-1, Exh. 11.)  In his appellate brief, Shepherd raised the following assignments of error:

1.      The Defendant was deprived of his right to a speedy trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, and Section 10, Article I of the Ohio constitution.

2.      The trial court erred in allowing recorded telephone conversations into evidence without the recordings being properly authenticated.

3.      Defendant was denied effective assistance of counsel to request an instruction on the inferior degree offense of aggravated assault or present

-4-

an argument for self-defense.

4.  The trial court erred when it received a jury question and answered it without consulting counsel and outside of the presence of the Defendant.

5.  The Defendant's sentence was contrary to law in that the Defendant claims he was given a much longer sentence for rejecting a plea bargain and exercising his constitutional right to a jury trial.

6.  The Defendant was deprived his right to a fair trial by the cumulative effect of all errors, even if any one of those errors may be ruled as harmless.

(Doc. No. 11-1, Exh. 12 at i-ii.)  The State filed its brief in opposition on August 2, 2012.  (Doc. No. 11-1, Exh. 13.)  Shepherd filed a reply brief on August 13, 2012.  (Doc. No. 11-1, Exh. 14.)

On November 21, 2012, the state appellate court affirmed Shepherd's convictions, but remanding for resentencing of the consecutive and postrelease control portions of his sentence. *Shepherd*, 2012 WL 5877553 at *17.  (Doc. No. 11-1, Exh. 15.)  Shepherd filed two motions for reconsideration, which were denied.  (Doc. No. 11-1, Exh. 31.)

On January 24, 2013, Shepherd, through new counsel, filed a Notice of Appeal with the Ohio Supreme Court.  (Doc. No. 11-1, Exh. 16.)  In his Memorandum in Support of Jurisdiction, Shepherd asserted the following propositions of law:

1.  The trial court violates the accused's statutory and constitutional right to speedy trial when it counts all continuances against the accused [where] he has repeatedly objected to continuances and demanded a speedy trial.

2.  The Defendant is deprived the effective assistance of trial counsel where counsel fails to request an instruction on the inferior degree offense of aggravated assault or present an argument for self-defense even though the evidence admitted at trial supported such instruction and argument.

3.  The trial court violates the Defendant's state and federal constitutional rights when it receives and responds to jury questions outside the Defendant's presence and without seeking input from the defendant or his counsel.

-5-

4.  The trial court violated the Defendant's right to due process when it imposes a longer sentence because the Defendant opted to have his case resolved by way of a jury trial rather than a guilty plea.

(Doc. No. 11-1, Exh. 17.)  The State waived response.  (Doc. No. 11-1, Exh. 18.)  On March 27, 2013, jurisdiction was declined pursuant to S. Ct. Prac. R. 7.08(B)(4).  (Doc. No. 11-1, Exh. 19.)

**C.    Resentencing**

Meanwhile, on January 8, 2013, Shepherd was resentenced pursuant to the state appellate court's judgment.  (Doc. No. 12-3, Tr. 3.)  The trial court again imposed a total of thirteen years in prison, with consecutive sentences of seven years for the merged felonious assault counts, three years for the merged firearm specifications, and three years for the weapon under disability count.  It reduced the post-release control sentence, however, from five years to three years.  (Doc No. 12-3, Tr. 22-25; Doc. No. 11-1, Exh. 20.)

**D.    Direct Appeal of Resentencing**

On February 4, 2013, Shepherd, through counsel, appealed his new sentence.  (Doc. No. 11-1, Exh. 21.)  In his brief, he raised the following assignments of error:

1.  The trial court committed error when it sua sponte and unilaterally elected that since the one and three-year firearm specifications of which shepherd was found guilty, it would sentence Mr. Shepherd on the three year specification as it is the prosecutor rather than the court which must make the election.

2.  The trial court committed error when it failed to merge for sentencing the firearm specification with the weapon under disability charge; they were committed by the same conduct and with the same animus and are thus allied offenses of similar import pursuant to R.C. 2941.25.

3.  Appellant was denied his right to effective assistance of counsel when his trial attorney failed to object to the court rather than the state electing the firearm specification on which he would be sentenced and when his

-6-

attorney neither moved the court to merge any firearm specification with
the weapon under a disability charge nor object to the trial court's failure to
merge those offenses.

(Doc. No. 11-1, Exh. 22.)  The State filed a brief in opposition.  (Doc. No. 11-1, Exh. 23.)

Shepherd replied to the State's brief.  (Doc. No. 11-1, Exh. 24.)  On November 7, 2013, the state

appellate court affirmed the trial court's sentence.  *State v. Shepherd*, 2013 WL 5970337 (Ohio

App. 8th Dist. Nov. 7, 2013).  (Doc. No. 11-1, Exh. 25.)

On December 19, 2013, Shepherd, through counsel, filed a Notice of Appeal with the

Ohio Supreme Court. (Doc. No. 11-1, Exh. 26.)  In his Memorandum in Support of Jurisdiction,

Shepherd asserted the following propositions of law:

1.  A trial court commits error when it sua sponte and unilaterally elects
between one and three-year firearm specifications of which a defendant is
found guilty as it the prosecutor rather than the court which must make the
election.

2.  A trial court commits error when it fails to merge for sentencing a firearm
specification with the weapon under disability charge when the two ... were
committed by the same conduct and with the same animus.

3.  A criminal is denied his right to effective assistance of counsel when his
trial attorney fails to object to the court rather than the state electing the
firearm specification on which he would be sentenced and when his
attorney neither moves the court to merge nor objects to the failure to
merge a firearm specification with a weapon under a disability charge.

(Doc. No. 11-1, Exh. 27.)  The State filed a memorandum in opposition.  (*Id*., Exh. 28.)  On

March 26, 2014, jurisdiction was declined pursuant to S. Ct. Prac. R. 7.08(B)(4).  (*Id*., Exh. 29.)

**E.**     **Federal Habeas Petition**

On March 31, 2015, Shepherd filed *pro se* a Petition for Writ of Habeas Corpus.  (Doc.

No. 1.)   His Petition asserts the following four grounds for relief:

-7-

**Ground One:** The trial court violates the accused's statutory and constitutional right to speedy trial when it counts all continuances against the accused that he has repeatedly objected to and has demanded a speedy trial.

**Ground Two**: The defendant is deprived of the effective assistance of trial counsel where counsel fails to request an instruction on the inferior degree offense of aggravated assault or present an argument for self-defense even though the evidence admitted at trial supported such instruction and argument.

**Ground Three**: The trial court violated Petitioner's federal constitutional rights when it received and responded to jury questions outside Petitioner's presence and without seeking input from the Petitioner's counsel.

**Ground Four**: Petitioner is denied the right to effective assistance of counsel when his trial attorney fails to object to the court when it unilaterally elected between firearm specifications rather than allowing the state to elect which specification would be used for sentencing when his counsel neither moves for merger nor objects to the failure to merge with the [weapons under disability] charge.

(Doc. No. 1 at 5, 6, 8, 9.)  Respondent filed a Return of Writ on July 17, 2015.  (Doc. No. 11.)

Shepherd filed a "Memorandum in Support of Petition for Habeas Corpus" on December 28, 2015.  (Doc. No. 15.)

### III.  Review on the Merits[1]

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim

---

[1]  As Respondent concedes that the petition is timely and the grounds for relief raised have been exhausted, the Court proceeds directly to the merits of the petition.  (Doc. No. 11 at 8-9, 12, 19, 25.)

>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).  Clearly established federal law is to be determined by the holdings of the United States Supreme Court.  *See Parker v. Matthews,* 132 S. Ct. 2148, 2012 WL 2076341, *6 (U.S. Jun. 11, 2012); *Renico v Lett,* 559 U.S.   , 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002))  The Supreme Court has indicated, however, that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 2012 WL 2076341, *6; *Howes v. Walker,* 132 S.Ct. 2741, 2012 WL 508160 (2012).

   A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.  However, a federal district court may not find a state court's decision unreasonable "simply because that court

concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6ᵗʰ Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6ᵗʰ Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id*. at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id*. (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786  87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.").

**A.      Ground One: Speedy Trial**

Shepherd claims for his first ground for relief that he was denied his right to a speedy trial.

(Doc. No. 15 at 15-22.)  The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial . . . ."  U.S. Const. Amend VI.  In *Barker v. Wingo*, 407 U.S. 514 (1972), the Supreme Court established a four-part balancing test to determine whether a defendant has been deprived of his constitutional right to a speedy trial:  (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant.  *Id*. at 530.  In weighing these factors, courts must balance "whether [the] delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result."  *Doggett v. United States*, 505 U.S. 647, 651 (1992).

The state appellate court addressed Shepherd's statutory[2] and federal constitutional speedy trial claims as follows:

> {¶ 12} In his first assignment of error, Shepherd contends that his constitutional and statutory speedy trial rights were violated.

> {¶ 13} The right to a speedy trial is a fundamental right guaranteed by the Sixth Amendment to the United States Constitution, made obligatory on the states by the Fourteenth Amendment. The Ohio Constitution, Article I, Section 10, guarantees an accused this same right. . . .  Although the United States Supreme Court

---

[2]  The Court includes the state appellate court's statutory speedy trial analysis only because it discusses the procedural history and the many delays attributable to the defense.  Any alleged violation of the state court's application of state law is non-cognizable, as a federal court reviewing a habeas petition is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  *See Estelle v. Mcguire*, 502 U.S. 62, 68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 79 L. Ed. 2d 29 (1984) ("A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law."); *Norris v. Schotten*, 146 F.3d 314, 329 (6th Cir. 1998) ("A claim based solely on an error of state law is not redressable through the federal habeas process."); *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994).

declined to establish the exact number of days within which a trial must be held, it recognized that states may prescribe a reasonable period of time consistent with constitutional requirements. *Barker v. Wingo*, 407 U.S. 514, 523, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In response to this authority, Ohio enacted R.C. 2945.71, which designates specific time requirements for the state to bring an accused to trial.

{¶ 14} When reviewing a speedy trial question, the appellate court must count the number of delays chargeable to each side and then determine whether the number of days not tolled exceeded the time limits under R.C. 2945.71. . . .  Further, this court must construe the statutes strictly against the state when reviewing the legal issues in a speedy trial claim. . . .

{¶ 15} The time to bring a defendant to trial can be extended for any of the reasons enumerated in R.C. 2945.72, including (1) "[a]ny period of delay occasioned by the neglect or improper act of the accused," (2) "any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused," or (3) "the period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion." R.C. 2945.72(D), (E), and (H).

{¶ 16} R.C. 2945.71(C)(2) provides that a person against whom a felony charge is pending shall be brought to trial within 270 days after the person's arrest. For purposes of computing time under R.C. 2945.71(C)(2), each day the accused is held in jail in lieu of bail on the pending charge shall be counted as three days. See R.C. 2945.71(E). This "triple-count" provision reduces a defendant's speedy trial time to 90 days if the defendant is incarcerated the entire time preceding trial. . . . Shepherd was in held in jail in lieu of bond during the pendency of his case and, thus, the triple-count provision applies.

{¶ 17} Shepherd was arrested on May 12, 2011. Generally, when computing how much time has run against the state under R.C. 2945.71, we begin with the day after the accused was arrested. . . .  Thus, Shepherd's speedy trial time began to run on May 13, 2011.

{¶ 18} Fifteen days passed until the first tolling event, which occurred on May 27, when Shepherd filed a demand for discovery. While the speedy-trial clock is not tolled indefinitely by such a motion, it is tolled for a reasonable time. . . .  The state responded on June 6, 2011, well within a reasonable time. Thus, Shepherd's speedy trial time was tolled for those ten days, bringing Shepherd's speedy trial time to 25 days.

{¶ 19} The state also moved for discovery on the same day it responded to

Shepherd's motion. Shepherd never responded to the state's discovery request. "The failure of a criminal defendant to respond within a reasonable time to a prosecution request for reciprocal discovery constitutes neglect that tolls the running of speedy-trial time pursuant to R.C. 2945.72(D)." . . .  What is a reasonable amount of time, however, is for the trial court to determine based on the particular circumstances of the case. . . .  Nonetheless, it is not necessary for us to remand to the trial court because we will not toll any time against him for not responding to the state's motion; but other events toll the time.

{¶ 20} On June 7, the docket indicates that a pretrial was held and continued to June 16 at the request of defendant. Thus, Shepherd's speedy trial time was tolled during this time, and as of June 16, Shepherd's speedy trial time remained at 25 days.

{¶ 21} On June 9, Shepherd filed a pro se "motion to deny consent to any continuances at defendant's request and to move this court to set a trial date." He filed several other pro se motions throughout the pendency of his case. A defendant who is represented by counsel, however, is not permitted to file pro se motions. . . .  Thus, Shepherd's pro se motions do not toll his speedy trial time (although as of June 7, his speedy trial time was being tolled due to his request for a continuance until June 16). Further, "[a] defendant's right to be brought to trial within the time limits expressed in R.C. 2945 .71 may be waived by his counsel for reasons of trial preparation and the defendant is bound by the waiver even though the waiver is executed without his consent.". . .

{¶ 22} On June 16, a pretrial was held and continued to June 23 at the request of defendant. On June 23, a pretrial was held and continued to July 12 at the request of defendant. On July 12, a pretrial was held and continued to August 1 at the request of the defendant. On August 1, however, there is no journal entry indicating that the trial court held a pretrial. Thus, defendant's speedy trial time was tolled up to August 1. Time is charged against the state for ten days, from August 1 to August 10, bringing Shepherd's speedy trial time to 35 days.

{¶ 23} The docket indicates that on August 10, which was the trial date, the state requested a continuance until August 30 to compel a witness to appear. Dotson, the state's main witness, failed to appear for trial, and a warrant was issued for his arrest.  A motion to continue that is filed by the state may toll speedy trial time so long as the trial record affirmatively demonstrates the necessity for a continuance and the reasonableness thereof. . . .  A prosecuting attorney's motion to continue based on the unavailability of a witness acts to extend the speedy trial provisions if the length of the delay is reasonable. We conclude that the prosecutor's request for a continuance and the length of delay were both reasonable and act to toll Shepherd's speedy trial time.

-13-

{¶ 24} On August 30, the docket indicates that the trial court held a pretrial. But it simply states "Nunc pro tunc entry as of and for 08/01/2011. Pretrial held 08/30/2011.  Trial set for 08/10/2011 at 09:00 a.m. at the request of defendant." This entry is not clear.  If the trial court was attempting to place an entry on the docket for August 1, it could not do so. A nunc pro tunc order that a court later enters on the docket cannot relate back to an earlier date because an order nunc pro tunc is not available to make the record reflect orders the court should have made but did not. . . .

{¶ 25} The next docket entry is August 31. Thus, we will count one day toward Shepherd's speedy trial time for August 30 because the court did not indicate what occurred on August 30, if anything (it had been the date the trial was supposed to occur after the state's request to compel its witness). As of August 31, Shepherd's speedy trial time was 36 days.

{¶ 26} On August 31, the trial court held a hearing. The docket indicates that the state was prepared to go to trial, but the trial court granted defense counsel's motion to withdraw as Shepherd's counsel. The trial court then appointed new counsel for Shepherd, and the case was continued at the request of defendant to September 15. Speedy trial time is tolled by any period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon his request as required by law. R.C. 2945.72(C). . . .

{¶ 27} Shepherd argues that the trial court abused its discretion in appointing new counsel because he objected to new counsel being appointed. But the record reflects that Shepherd did not object to new counsel being appointed as he claims. Defense counsel made his oral request to withdraw, stating that he and Shepherd had irreconcilable differences. The trial court asked Shepherd if he objected. Shepherd replied, "[i]f I object, then what?" The trial court explained that could happen if Shepherd objected. The trial court then asked Shepherd if he had any other questions. Shepherd replied that he did not. The trial court then granted defense counsel's motion to withdraw, which was entirely within its discretion to do so. . . .

{¶ 28} The docket further indicates that Shepherd's new defense counsel filed a series of discovery motions on September 2. The state did not respond until November. Again, Shepherd's speedy trial time was tolled for a reasonable amount of time, which is 30 days, as we stated previously. Thus, Shepherd's speedy trial time was tolled until October 2.

{¶ 29} Further, Shepherd requested to continue a scheduled pretrial six more times: on September 15, September 20, September 28, October 18, November 2,

-14-

and November 21 (continued to the date of trial). During this time, all time was tolled due to Shepherd's continuances except from October 11 (when there is no docketed entry continuing the pretrial) to October 18 (the next docketed pretrial). For this time, seven days is charged to the state, bringing Shepherd's speedy trial time to 43 days. The November 21 continuance took Shepherd's case up to the date of his trial in December.

{¶ 30} Accordingly, we conclude that Shepherd's statutory speedy trial rights were not violated as it was well within the 90 day period.

{¶ 31} Regarding Shepherd's constitutional speedy trial rights, we find no violation.  Shepherd was arrested in May 2011 and brought to trial in December 2011.  As this court recently stated, until a defendant has met the "threshold requirement" of a "presumptively prejudicial" delay, we do not even get to the constitutional analysis set forth in the seminal case, *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *State v. Duncan*, 8th Dist. No. 97208, 2012 Ohio 3683, ¶ 8.  Courts have generally found postaccusation delay to be "presumptively prejudicial" as it approaches one year. *Id*. at ¶ 9, citing *Doggett v. United States*, 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).  Here, seven months had elapsed.  We do not find seven months to be presumptively prejudicial and, thus, Shepherd has not met the threshold requirement.  Therefore, his constitutional speedy trial rights have not been violated.

*Shepherd*, 2012 WL 5877553, at **3-6 (internal citations omitted).

Applying *Barker*'s balancing test, this Court agrees with the state court that Shepherd was not denied his constitutional right to a speedy trial.  The first factor of the test is "actually a double enquiry."  *Doggett*, 505 U.S. at 651. "[T]o trigger a speedy trial analysis," a petitioner first must demonstrate that "the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay."  *Id.* at 651-52.  *See also United States v. Robinson*, 455 F.3d 602, 607 (6th Cir.2006) ("The first factor is a threshold requirement, and if the delay is not uncommonly long, judicial examination ceases.").  "The length of the delay is measured from the date of the indictment or the date of the arrest, whichever is earlier" to the date of the trial.  *Maples v. Stegall*, 427 F.3d 1020, 1026 (6th Cir. 2005).  A delay that approaches one

-15-

year is "presumptively prejudicial," and triggers a speedy trial analysis. *Id.*, *citing Doggett*, 505 U.S. at 652 n.1. Once the *Barker* analysis is triggered, a "court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Doggett*, 505 U.S. at 652.

The seven-month delay between the date of Shepherd's arrest and the date of his trial does not rise to the level of presumptively prejudicial. The Sixth Circuit has observed that "[d]elays several months short of one year are not 'uncommonly long'" *United States v. Gardner*, 488 F.3d 700, 719 (6th Cir. 2007) (citations omitted). In *Gardner*, for example, the court found a delay of 265 days, or nearly nine months, not presumptively prejudicial. 488 F.3d at 719; *see also United States v. Brown*, 498 F.3d 523, 530 (6th Cir. 2007) ("The nearly ten-month delay here is likely right at the line to trigger an analysis of the remaining factors."); *United States v. Cummings*, 2012 WL 4442738, at *4 (S.D. Ohio Sept. 25, 2012) (holding seven months and eight days was not presumptively prejudicial). Other circuit courts similarly have found delays of approximately seven months insufficient to trigger a full speedy trial analysis under *Barker*. *See, e.g., United States v. Lugo*, 170 F.3d 996, 1002 (10th Cir. 1999) ("[T]he delay of approximately seven months, even if not excusable, is not 'presumptively prejudicial' and, therefore, a *Barker* analysis is not necessary."); *United States v McFarland*, 116 F.3d 316, 318 (8th Cir. 1997) (lapse of "a little over seven months" was "too brief to trigger review of Sixth Amendment speedy trial claim"); *United States v. MacDonald*, 635 F.2d 1115, 1117 (4th Cir. 1980) (delay of "at most seven months" found to be "entirely too short to 'trigger' further inquiry under *Barker*"). Therefore, the state court reasonably applied clearly established federal law.

Moreover, even if this Court were to assume for the sake of argument that the seven-

month delay that occurred in this case is presumptively prejudicial, the remaining *Barker* factors would outweigh this presumption. The second *Barker* factor concerns the reason for the delay, examining who is "more to blame," the government or the criminal defendant. *Doggett*, 505 U.S. at 651. Here, the defense requested more than a dozen continuances, several of which resulted from Shepherd obtaining new counsel. The prosecution, on the other hand, sought just one continuance, and that was because it had to compel its main witness to appear at trial. The *Barker* court specifically noted that "a valid reason, such as a missing witness, should serve to justify appropriate delay." *Barker*, 407 U.S. at 531.

Shepherd argues that the defense-initiated continuances should not be attributed to him. He claims he did not agree to the continuances, and in fact filed *pro se* motions objecting to them, and he did not "want" new counsel. (Doc. No. 15 at 17-18.) In *New York v. Hill*, 528 U.S. 110, 118 (2000), however, the Supreme Court held that defense counsel could effectively waive a defendant's right to be brought to trial within a specified time period under the Interstate Agreement on Detainers (IAD), which establishes procedures for the resolution of one state's outstanding charges against a prisoner of another state, by agreeing to a trial date outside that time period, even without the defendant's express consent. It explained,

> Scheduling matters are plainly among those for which agreement by counsel generally controls. This case does not involve a purported prospective waiver of all protection of the IAD's time limits or of the IAD generally, but merely agreement to a specified delay in trial. When that subject is under consideration, only counsel is in a position to assess the benefit or detriment of the delay to the defendant's case. Likewise, only counsel is in a position to assess whether the defense would even be prepared to proceed any earlier. Requiring express assent from the defendant himself for such routine and often repetitive scheduling determinations would consume time to no apparent purpose.

*Id*. at 115; *see also Taylor v. Illinois*, 484 U.S. 400, 417-18 (1988) ("Although there are basic

rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has    and must have    full authority to manage the conduct of the trial.").  In addition, the state appellate court expressly found that Shepherd did not object to new counsel being appointed as he claims; and, the record supports this finding.  (*See* Doc. No. 12-1, Tr. 37-40.)   As the state court also explained, it was well within the trial court's discretion to appoint new counsel.  Even if Shepherd had objected to the appointment of new counsel, therefore, the court's decision to grant counsel's motion to withdraw still would have tolled the speedy trial statute.  Shepherd, therefore, was "more to blame" for the delays in conducting his trial.

The third factor under *Barker*, regarding whether the defendant asserted his speedy trial rights in a timely fashion, *Doggett*, 505 U.S. at 641, weighs in Shepherd's favor.  Shepherd filed several *pro se* motions requesting a trial date and objecting to any continuances.  He also raised the issue at pretrials.  (*See* Doc. No. 11-1, Exh. 30; Doc. No. 12-1, Tr. 18-22, 43-52.)  Indeed, as Respondent points out and the trial court observed on the record, it was Shepherd's insistence on raising his speedy trial arguments that may have prompted his first trial counsel to withdraw due to irreconcilable differences, creating even more delay.  (Doc. No. 11 at 18; Doc. No. 12-1, Tr. 50 (trial court rejecting Shepherd's speedy trial argument as "not well taken," and adding, "indeed, that may have been one of the reasons that Marcus Sidoti no longer continued as trial counsel in this case."))

The last *Barker* factor concerns the prejudice Shepherd may have suffered as a result of the delay.  A defendant must show "substantial prejudice."  *United States v. Schreane*, 331 F.3d 548, 557 (6th Cir. 2003) (*citing United States v. White*, 985 F.2d 271, 276 (6th Cir. 1993)).  The

Supreme Court has identified three types of prejudice in speedy trial cases: (1) "oppressive pretrial incarceration"; (2) "anxiety and concern of the accused"; and (3) "'the possibility that [the accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence." *Doggett*, 505 U.S. at 654 (*quoting Barker*, 407 U.S. 514 at 532) (alteration in original). "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532.

Shepherd first argues that he is entitled to a "presumption of prejudice." (Doc. No. 15 at 19-20). He cites for support *Doggett v. United States, supra*, in which the Supreme Court stated, "[A]ffirmative proof of prejudice is not essential to every speedy trial claim. . . . [E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Doggett*, 505 U.S. at 655-56. The Sixth Circuit has noted, however, that the "presumption of prejudice discussed in *Doggett* . . . is not automatically applicable whenever a defendant's trial is delayed." *United States v. Howard*, 218 F.3d 556, 564-65 (6th Cir. 2000). It explained:

> Where there is evidence of negligence on the government's part, but no bad faith, the Supreme Court has declared that a presumption of prejudice may arise, depending upon the length of the delay. *See id*. at 657. "To warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice." *Id*. In *Doggett*, the Supreme Court noted an "extraordinary 8 1/2 year lag between Doggett's indictment and arrest," *id*. at 652, and concluded that this delay was sufficient to create a presumption of prejudice to the defendant. The Court also noted that "lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." *Id*. at 652 n.1.

*Id*. at 564-65. Shepherd contends that he is entitled to a presumption of prejudice because the seven-month delay in bringing him to trial "all can be attributed to the state." (Doc. No. 15 at 19-

-19-

20.)  As noted above, however, the delays in this case were almost entirely caused by the defense, not the State.  Moreover, seven months does not constitute an "extraordinary" delay.  Shepherd is not entitled to a presumption of prejudice.

In the alternative, Shepherd argues that he can demonstrate that he suffered each form of prejudice the Court identified in *Barker* and *Doggett*.  He claims his seven-month pretrial incarceration was "oppressive" and his "repeated invocation" of his speedy trial rights shows his "anxiety and concern."  He also contends that his defense was impaired because: (1) his first trial counsel was prepared to argue self-defense, but his new counsel failed to offer any defense at all; and (2) "the State was without it's [*sic*] key witness, the victim, who prior to the delay had evinced a desire not to cooperate with the prosecution."  (*Id*. at 21.)

Shepherd has not demonstrated that he suffered prejudice at all, much less "substantial prejudice."  Again, a seven-month delay from arrest to trial is not "an oppressive pretrial incarceration."  Also, Shepherd's repeated assertion of his speedy trial rights do not evidence more anxiety or concern than any defendant might experience while waiting to be tried for a serious offense.  Finally, Shepherd's argument that his defense was impaired by an alleged change in defense counsel's strategy and the availability of a State witness who was previously unavailable is unpersuasive.  The alleged change in strategy, by Shepherd's own account, was due to a substitution of counsel, not to delays in Shepherd's case going to trial.  Finally, as noted above, delays attributable to unavailable witnesses are justified.  *See Barker*, 407 U.S. at 531.  Presumably, then, securing that witness's presence at trial does not prejudice the opposing party.

Thus, considering the factors set forth in *Barker*, the state court reasonably concluded that Shepherd's Sixth Amendment right to a speedy trial was not violated.  The state appellate court's

decision did not contravene or misapply *Barker* and its progeny, and Shepherd has not shown that the state court judgment was based on an unreasonable determination of the facts in light of the evidence presented.

**B.      Grounds Two and Four: Ineffective Assistance of Trial Counsel**

Shepherd claims in his second and fourth grounds for relief that his trial counsel provided ineffective assistance in violation of his Sixth Amendment rights.  Specifically, he complains that counsel failed to: (1) request a jury instruction on the inferior degree offense of aggravated assault; (2) present an argument for self-defense; (3) object to the trial court's *sua sponte* election of the firearm specification upon which to impose a sentence; and, (4) request that the firearm specification and weapon under disability charge be merged.

The Supreme Court enunciated a two-part test governing ineffective assistance of trial counsel claims in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution.  *Strickland*, 466 U.S. at 687.  He also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair.  *Id*.  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir.1992).

-21-

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy. *Id*. at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

1.    **Aggravated Assault Instruction and Self-Defense Theory**

Shepherd's first two criticisms of his trial counsel are related. He argues that counsel should have presented a self-defense argument, which he maintains the evidence at trial supported. In carrying through with this self-defense theory, he continues, counsel should have requested a jury instruction for the lesser offense of aggravated assault, which applies when an assault is provoked by the victim. Instead, he asserts, counsel argued to the jury that he was not present at the scene of the crime and therefore could not have committed the shooting, which was soundly refuted by the evidence. (Doc. No. 15 at 24-25.)

The state appellate court, the last court to review these claims, rejected them, stating:

{¶ 41} In his third assignment of error, Shepherd argues that his trial counsel was ineffective (1) for failing to request an instruction on the inferior degree offense of aggravated assault, and (2) for failing to present an argument for self-defense.

{¶ 42} To sustain a claim of ineffective assistance of counsel, a defendant must show: (1) counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different when considered in relation to the totality of the evidence before the court. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

*9 {¶ 43} With regard to the first prong, counsel is entitled to a strong presumption that his or her conduct falls within the vast range of reasonable professional

-22-

assistance. The defendant must therefore overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Id.* at 689. Strategic and tactical decisions fall squarely within the scope of professionally reasonable judgment. *Id.* at 699.

{¶ 44} With respect to the second prong, the defendant must demonstrate that he or she was prejudiced by "a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The inquiry is whether counsel's errors were so serious as to deprive the defendant of a proceeding whose results are reliable, i.e., "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

{¶ 45} Any questions regarding the ineffectiveness of counsel must be viewed in light of the evidence against the defendant with a strong presumption that counsel's conduct is within the broad range of professional assistance. . . .

{¶ 46} The offense of aggravated assault is an inferior degree of felonious assault because its elements are identical to or contained within the offense of felonious assault, coupled with the additional presence of one or both mitigating circumstances of sudden passion or a sudden fit of rage brought on by serious provocation occasioned by the victim. . . .  In other words, aggravated assault is the same conduct as felonious assault but its nature and penalty are mitigated by provocation. . . .  A defendant bears the burden of proving the mitigating factor by a preponderance of the evidence. . . .

{¶ 47} In order to prove the affirmative defense of self-defense, a defendant must establish: (1) that he was not at fault in creating the situation giving rise to the affray, (2) that he had a bonafide belief that he was in imminent danger of bodily harm and that his only means of escape from such danger was in the use of such force, and (3) that he did not violate any duty to retreat or avoid the danger. . . .  If defendant "fails to prove any one of these elements by a preponderance of the evidence he has failed to demonstrate that he acted in self-defense." . . .

{¶ 48} After reviewing the record, we conclude that defense counsel's performance was not deficient for failing to request jury instructions on aggravated assault and for failing to present a self-defense argument. Aggravated assault and self-defense were inconsistent with Shepherd's theory at trial that he had left the bar by the time Dotson was shot.

{¶ 49} During his opening statement, defense counsel explained to the jury that Shepherd was at the Spot II Lounge when Dotson and his girlfriend came in the bar. Defense counsel stated that Dotson walked up to Shepherd and they discussed the $100. Defense counsel told the jury that Shepherd and Dotson "finally reached

-23-

an accord, an agreement," and that "[his] client then walked out of the bar and left." Defense counsel went on to tell the jury, "My client has no further explanation as to what happened. He was not there. He was not the shooter, and he is not guilty of this particular offense."

{¶ 50} Moreover, other transcript testimony lends insight as to why defense counsel preceded on the theory that Shepherd was not present during the shooting. On the day of trial, before the trial court called the jury, it asked defense counsel, "[h]as your client given any consideration to a plea in this case?" Defense counsel responded, "[y]our Honor, I have talked to him in depth about the possibility of pleading. He said he was not there. He did not do it. I told him that I thought it was in his best interest to consider a plea and [he] still hasn't."

{¶ 51} Defendant interjected that his counsel never discussed a plea with him. The state then stepped in and stated that on the previous day it had, in fact, offered a plea deal to Shepherd, where he would plead guilty to aggravated assault with a one-year gun specifications, as well as having a weapon while under a disability, and the remaining charges and specifications would be nolled. Defense counsel then explained for the record that he did speak to his client about the potential plea. Defense counsel further explained that Shepherd's sister also tried to get him to take the plea deal. Shepherd told the court that he did talk to his sister, but said they got into an argument and he "asked for her to be removed."

{¶ 52} The trial court stated:

> I'm not going to invade the attorney/client privilege, but I have talked to your attorney and the prosecutor on numerous occasions about this case. This case is probably one of the more heavily pretried cases that I have had in 21 years that I have been a judge * * *. On repeated occasions I have asked your present counsel and I asked your former counsel if they have discussed plea bargains with you. In both instances both attorneys on numerous occasions have told me, yes, and you have completely rejected any discussion of plea bargain at any time.

{¶ 53} The trial court then stated, "Now, that's what they have told me, okay. There is the potential of a plea bargain here today. Did you hear that?" Shepherd replied that he had. The court then asked him, "[a]re you interested in a plea bargain?" Shepherd replied, "[n]ot the one that she is   no." The trial court then called the jury.

{¶ 54} Accordingly, Shepherd was not deprived of his right to effective counsel. His third assignment of error is overruled.

-24-

*Shepherd*, 2012 WL 5877553, at **8-10 (internal citations omitted).

As the state appellate court found, the record shows that throughout his case, Shepherd denied any culpability for the crime and supported his counsel's theory of defense.  Before trial, defense counsel told the trial court that, against his advice, Shepherd would not accept a plea, because he insisted that "he was not there. He did not do it."  (Doc. No. 12-1, Tr. 58.)  Consistent with that position, defense counsel presented one simple argument in his opening statement: that Shepherd was not at the scene of the crime.  Counsel's entire statement was this:

> Thank you.  Very simple case.  He was in the bar.  They were having discussion.
>
> Let's back up a little bit.  When they were coming to the bar, he had already been there.  Elijah was standing outside rolling a cigarette.  At that point in time he saw Mr. Dotson's girlfriend walk in.  He looked at them.  Then Dotson came up, and he said, You owe me some money.  They talked about it.  He went inside the bar.  My client went in there, discussed it some more, exchanged some money with the bartender, and there was some discussion.  Why can't you pay me, why won't you pay me, those kind of things and then finally reached an accord, an agreement. My client then walked out of the bar and left.
>
> ***My client has no further explanation as to what happened.  He was not there.  He was not the shooter, and he is not guilty of this particular offense***.
>
> And I can assure you the State will not be able to prove that Elijah did anything other than engage in conversation.  It may have been a little heated conversation.  And left the bar first and went on his merry way.
>
> Thank you very much.

(Doc. No. 12-1, Tr. 173-74) (emphasis added).  Shepherd did not voice his disagreement with this defense in either instance.

Now, Shepherd argues that this defense was "ludicrous" because "all evidence contradict[ed] such a theory, and Petitioner himself offered no evidence [to the] contrary . . . ."

(Doc. No. 15 at 25.)  But Shepherd does not identify anything in the record that contradicts the state court's findings or its reasonable presumption that counsel chose his theory of defense based on Shepherd's insistence that he was not present during the shooting.  "*Strickland* specifically commands that a court 'must indulge [the] strong presumption' that counsel 'made all significant decisions in the exercise of reasonable professional judgment,'" recognizing "the constitutionally protected independence of counsel and . . . the wide latitude counsel must have in making tactical decisions."  *Cullen v. Pinholster*, 563 U.S. 170, 195-96 (2011) (quoting *Strickland, ,* 466 U.S. at 689-90).

Accordingly, the state appellate court's decision rejecting Shepherd's ineffective assistance claims regarding the theory of defense and aggravated assault jury instruction was not contrary to, or an unreasonable application of, *Strickland* and its progeny.

### 2.    Firearm Specification Sentencing and Merger

Shepherd further claims that his trial counsel was ineffective for failing to object to the trial court's *sua sponte* election regarding the firearm specification upon which he should be sentenced, and for failing to request the merger of the firearm specification and weapon under disability charge.  (Doc. No. 15 at 33-36.)

The state appellate court considered this claim on Shepherd's direct appeal of his resentencing:

> {¶ 6} Shepherd was found guilty of felonious assault with firearm specifications that carry both one- and three-year mandatory prison sentences. Accordingly, the trial court was required pursuant to R.C. 2929.14(B)(1)(a)(ii) to impose the mandatory penalty of three years. There was no discretion, and the state was not even in a position to elect which specification to proceed with sentencing on. The mandatory three-year sentence necessarily subsumes the mandatory one-year sentence. See R.C. 2929.14(B)(1)(b).

-26-

{¶ 7} Accordingly, we find no merit to Shepherd's first assignment of error.

{¶ 8} In his second assignment of error, Shepherd contends that having a weapon while under disability is an allied offense of similar import to a firearm specification. This argument has been considered and consistently rejected by this court. . . . .

{¶ 9} Accordingly, Shepherd's second assignment of error is overruled.

{¶ 10} In his third assignment of error, Shepherd argues that counsel was ineffective for failing to object to the trial court's sua sponte election of which firearm specification he should be sentenced on and for failing to request that the firearm specification and weapon under disability charge should merge. Shepherd's claim for ineffective assistance of counsel, which is premised on his previously rejected assignments of error, must equally fail. The third assignment of error is overruled.

*Shepherd*, 2013 WL 5970337, at **1-2 (internal citations omitted).

Through these claims, Shepherd essentially argues that his trial counsel was ineffective for failing to protect his rights under Ohio's sentencing statutes. The state appellate court, however, rejected these claims, because it found no error in sentencing. This Court must defer to the state court's interpretation of Ohio law. State courts are the final authority on state law issues, and federal habeas courts must defer to, and are bound by, state court rulings on such matters. *See, e.g., Estelle*, 502 U.S. at 67 68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Warner v. Zent*, 997 F.2d 116, 133 (6ᵗʰ Cir. 1993) (On habeas review, we are bound by state court interpretations of state criminal law except in extreme circumstances where it appears that the interpretation is an obvious subterfuge to evade consideration of a federal issue."). Shephard's claim of ineffective assistance relating to his resentencing, therefore, is meritless.

-27-

**C.      Ground Three: Trial Court Error / *Ex Parte* Communication with the Jury**

For his third ground for relief, Shepherd argues that the trial court violated his constitutional right to be present at trial when it responded to a jury question when neither he nor his counsel was present.  (Doc. No. 15 at 29-32.)  The constitutional right of a criminal defendant to be present at trial is rooted in both the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment.  *United States v. Gagnon*, 470 U.S. 522, 526 (1985).  This right is not absolute, however.  The Supreme Court has recognized that "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987).  Nevertheless, the *Stincer* court observed that "this privilege of presence is not guaranteed 'when presence would be useless, or the benefit but a shadow,'" as opposed to when "'a fair and just hearing would be thwarted by his absence ....'" *Id.* (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-06 (1934)).  Whether a defendant has been improperly excluded from a trial proceeding must be considered in light of the whole record.  *Snyder, supra*, 291 U.S. at 115.

Thus, in *Rogers v. United States*, 422 U.S. 35, 41 (1975), the Court held that it was reversible error for a trial judge to respond to jury communications without the presence of either the defendant or his counsel.  The jury in that case had sent a note to the trial judge inquiring whether the court would accept a verdict of "Guilty as charged with extreme mercy of the Court." Without notifying the defendant or his counsel, the trial judge instructed the marshal who had delivered the note to advise the jury that the court's answer was in the affirmative.  The jury returned a guilty verdict five minutes later, recommending "extreme mercy."  *Id.*

Nevertheless, "not all communications between a judge and jury are critical stages meaning a stage at which there is a 'reasonable probability that [a defendant's] case could suffer significant consequences from his total denial of counsel.'" *Bourne v. Curtin*, 666 F.3d 411, 414 (6th Cir. 2012) (quoting *Van v. Jones*, 475 F.3d 292, 313 (6th Cir. 2007). "[V]iolations of these rights [to presence] are generally 'subject to harmless-error analysis.'" *Id*. at 413 (quoting *Rushen v. Spain*, 464 U.S. 114, 119 n.2 (1983)). For example, in *Rushen v. Spain, supra*, the Supreme Court stated that "the prejudicial effect of a failure" to "disclose the communication [with a juror]" can "normally" be resolved in a post-trial hearing. *Rushen*, 464 U.S. at 119. In *Rogers,* the Court held that a trial court's *ex parte* response to a jury's question about permissible verdicts was reversible only after extensively analyzing whether the error was harmless. *Rogers*, 422 U.S. at 40. Likewise, in *United States v. Gagnon, supra,* the Court found that the defendants' due process rights were not violated when they were excluded from an *in camera* conference between the judge, defense counsel, and a juror regarding the juror's possible bias, because the defendants "could have done nothing had they been at the conference, nor would they have gained anything by attending." *Gagnon,* 470 U.S. at 527.

The state appellate court, the last state court to consider this claim, provided the following analysis:

{¶ 55} In his fourth assignment of error, Shepherd argues that the trial court erred when it answered a jury question without consulting counsel and outside of his presence.

{¶ 56} The Fifth Amendment to the federal constitution, enforceable against the states through the Fourteenth Amendment, prohibits the various states from depriving any person "of life, liberty, or property, without due process of law." Similarly, the Ohio Constitution, Article I, Section 10, mandates that "[i]n any trial, in any court, the party accused shall be allowed to appear and defend in

-29-

person and with counsel." As the constitutional principle of due process has evolved on both the state and federal levels, the courts have broadened its guarantees to mandate the presence of the defendant, absent waiver of his rights or other extraordinary circumstances, at every stage of his trial. . . .  In Ohio, the expanded scope of the Due Process Clause, at least in criminal proceedings, had been embodied in Crim.R. 43(A) which provides, in pertinent part, that a "the defendant must be physically present at every stage of the criminal proceeding and trial[.]"

{¶ 57} With these principles in mind and citing to cases from the mid-to-late 1800s, the Ohio Supreme Court held that "[a] defendant in a criminal case has a right to be present when, pursuant to a request from the jury during its deliberations, the judge communicates with the jury regarding [the jury] instructions." *State v. Abrams*, 39 Ohio St.2d 53, 313 N.E.2d 823 (1974), paragraph one of the syllabus. Thus, " '[a] court or judge has no right to communicate with the jury respecting the charge of the court, after the jury has retired, except publicly, and in the presence of the accused. To do so is good cause for a new trial.' " *Abrams* at 55, 313 N.E.2d 823, quoting *Kirk v. State*, 14 Ohio 511 (1846).

{¶ 58} The Ohio Supreme Court has made clear, however, that erroneous communications between the trial court and the jury constitute good cause for a new trial only if the communications prejudiced the defendant's right to a fair trial. *Abrams* at 56, 313 N.E.2d 823; *State v. Jenkins*, 15 Ohio St.3d 164, 233  237, 473 N.E.2d 264 (1984). In *Bostic v. Connor*, 37 Ohio St.3d 144, 524 N.E.2d 881 (1988), the Ohio Supreme Court explained that courts have found "a defendant or party" was "prejudiced by an ex parte communication between a judge and jury [when it] involved the possibility that the jury's verdict might have been influenced by the judge's response." *Id*. at 149  150, 524 N.E.2d 881.

{¶ 59} Just before the trial court read the jury's verdict in the presence of the state, Shepherd, his counsel, and the jury, it stated on the record:

> I would like to put one thing on the record. There was one question during deliberations, and the question is as follows: Are we to choose between the gun charges, firearm specifications R.C. 2941.141 and R.C. 2941.145, question, or do we choose a verdict on all charges?
>
> And my response was to them in writing was: Return a verdict on both counts and all gun specifications.

{¶ 60} When reading the question into the record, the trial court did not state

whether it had discussed the jury's question with defense counsel or the state before it gave its response to the jury. Shepherd's counsel did not object, however, when the trial court read the jury question into the record before the verdict. Nor did Shepherd's counsel move for a new trial based on the trial court's purported ex parte communication with the jury.

{¶ 61} In *State v. Chinn*, 85 Ohio St.3d 548, 568, 709 N.E.2d 1166 (1999), the Ohio Supreme Court explained in an appeal of right involving a death penalty sentence:

> Appellant contends that he is entitled to a new trial because there is nothing in the record to indicate that appellant and defense counsel were present on two occasions involving communications between the trial court and the jury. However, we are unwilling to presume that appellant and his attorneys were not present during the times in question. Rather, "the record must affirmatively indicate the absence of a defendant or his counsel during a particular stage of the trial." (Emphasis added.) The record does not affirmatively so indicate and, therefore, we reject appellant's tenth proposition of law.

> * * *

{¶ 62} Here, the record does not affirmatively establish that Shepherd or his counsel were absent when the trial court responded to the jury's question. If anything, the fact that defense counsel did not object would lend more support to the presumption that defense counsel knew about the jury question and either participated in fashioning a response or did not object to the trial court's response.

{¶ 63} Shepherd does not argue that the trial court's response influenced the jury's verdict in any way, nor does he explain how he was prejudiced by the trial court's answer; he merely contends that because he was not present, he was deprived of a fair trial. He cites to two Tenth District cases in support of his argument, *State v. Sales*, . . ., and *State v. Wade*, . . ., claiming they stand for the proposition that because the appellate court could not determine from the record "if the defendant or counsel was present when the trial court answered a jury's question," a new trial was warranted.

{¶ 64} If, however, *Sales* and *Wade* stood for what Shepherd contends they do, they would violate the Ohio Supreme Court's holding in *Chinn*, 85 Ohio St.3d 548, 568, 709 N.E.2d 1166, that the record must affirmatively establish the absence of a defendant or his counsel during a particular stage of the trial. See *Chinn, supra*. After a thorough review of these cases, however, we conclude that they do not

conflict with *Chinn*, nor do they stand for Shepherd's purported proposition.

{¶ 65} In *Sales* and *Wade*, the Tenth District found that the record did affirmatively establish the absence of the defendants and their counsel. In both cases, the trial court went on the record as it received each jury question, read the question into the record, and indicated its response on the record. The Tenth District court distinguished *Chinn,* and found that because the transcript indicated the presence of defendant and counsel at different points throughout the trial, but did not do so with respect to the jury questions, the record affirmatively established the absence of appellant and his counsel by its silence. . . . (We note that in Shepherd's case, because the trial court did not read the question into the record in real time as it occurred, we cannot make the same inference that the Tenth District did in *Wade* and *Sales*.) Rather, the Tenth District reversed both cases for a new trial because of several substantive issues it found with respect to the trial court's responses to the jury in the absence of the defendants, i.e., it therefore found that the defendants were prejudiced by the trial court's responses in their absence. Thus, we conclude that Sales and Wade are not analogous to the facts of this case.

{¶ 66} Accordingly, Shepherd's fourth assignment of error is overruled.

*Shepherd*, 2012 WL 5877553, at **11-13 (internal citations omitted).

Shepherd first disputes the state court's findings that the record did not affirmatively establish that Shepherd or his counsel were absent when the trial court responded to the jury's question. He states, "[t]he record below reflects that Petitioner has always maintained that he had no knowledge of the jury question, was not present in court to hear the question, and was neither aware of, nor participated in, the court's written response to the jury." (Doc. No. 15 at 30.) Shepherd, however, does not point to anything in the record to support this contention. As Respondent argues, Shepherd has not demonstrated that the state appellate court was clearly erroneous in finding that no improper *ex parte* communication occurred between the judge and jury. 28 U.S.C. § 2254(e)(1).

Moreover, even if there had been such an *ex parte* exchange, Shepherd fails to show that it influenced the jury's verdict or prejudiced him in any way. As the state court noted, Shepherd

-32-

"merely contends that because he was not present, he was deprived of a fair trial." 2012-Ohio-5415 at ¶63.  The trial court responded in writing to a jury question on a procedural, technical issue.  The communication did not address the substance of the jury's verdict, as in *Rogers*, a legal question, such as the substantive elements of an offense, or an evidentiary issue.  Shepherd "could have done nothing" had he been present when the judge wrote his response, "nor would [he] have gained anything" by being there.  *Gagnon,* 470 U.S. at 527.  Furthermore, counsel's failure to object when the trial court read the jury question and his response into the record clearly demonstrates that he did not consider the exchange prejudicial.

Accordingly, the state appellate court's decision did not contravene or misapply Supreme Court precedent[3] or make an unreasonable determination of the facts, and this claim fails.

### V.  Conclusion

For the foregoing reasons, it is recommended that Shepherd's Petition be DENIED.

/s/ Greg White
U.S. MAGISTRATE JUDGE


Date: February 25, 2016


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

---

[3]  The Court notes that AEDPA deference is due to a state court's decision even if the it does not refer to relevant Supreme Court cases or demonstrate an awareness of them.  *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*).  It is sufficient that the result and reasoning are consistent with Supreme Court precedent.  *Id.*

-33-